# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Sarah M. Kavianpour, MD,

                Plaintiff,

                        Case No. 1:20-cv-152-MLB

v.

Board of Regents of the University
System of Georgia d/b/a Augusta
University, et al.,

                Defendants.

_____/

## OPINION & ORDER

Plaintiff Sarah M. Kavianpour brings this action against eight defendants involved (in some way) in her termination from Augusta University's neurosurgery residency program: Defendants Board of regents of the University System of Georgia ("BOR"), doing business as Augusta University ("AU"); Medical College of Georgia Health Inc., doing business as Augusta University Medical Center, Inc. ("AUMC"); Brooks Keel; Phillip Coule; Clay Sprouse; Walter Moore; Susan Norton; and Debra Arnold.  Defendants filed four motions to dismiss.  (Dkts. 32–35.) The Magistrate Judge recommended granting in full the motions filed by

Defendants Keel, Coule, Sprouse, Moore, Norton, and Arnold; and granting in part the motions filed by Defendants AUMC and BOR. (Dkt. 61.) Plaintiff filed objections to which Defendants responded. (Dkts. 64–66.) The Court overruled Plaintiff's objections and granted in part and denied in part Defendant AUMC's Motion to Dismiss (Dkt. 32), granted Defendant Coule's Motion to Dismiss (Dkt. 33), granted in part and denied in part Defendant BOR's Motion to Dismiss (Dkt. 34), and granted the Motion to Dismiss (Dkt. 35) filed by Defendants Keel, Coule, Sprouse, Moore, Norton, and Arnold. (Dkt. 69.) Plaintiff moves for reconsideration of the Court's Order. (Dkt. 73.)

## I.    Standard of Review

Under the Local Rule 7.2(E), "[m]otions for reconsideration shall not be filed as a matter of routine practice," and should be brought only when "absolutely necessary." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258 (N.D. Ga. 2003). "Reconsideration is only 'absolutely necessary where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Id.* at 1258–59.

"Parties . . . may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); *see also Godby v. Electrolux Corp.*, Nos. 1:93–cv–0353–ODE, 1:93–cv–126–ODE, 1994 WL 470220, at *1 (N.D.Ga. May 25, 1994) ("A motion for reconsideration should not be used to reiterate arguments that have previously been made . . . . [It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court has already thought through—rightly or wrongly.")  Instead, a litigant must show "why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *United States v. Battle*, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003) (internal quotation marks omitted).  Motions for reconsideration are left to the sound discretion of the district court and granted as justice requires. *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

3

## II.   Discussion

Plaintiff's motion asks the Court to reconsider dismissing Count 1 in part and Counts 14 and 15 in their entirety.[1]

### A.   Count 1: Breach of Contract

Count 1 of the Complaint asserts a breach of contract claim against Defendants BOR and AUMC on the ground that they violated several policies incorporated by reference into Plaintiff's employment contract with AU.   The Magistrate Judge found AUMC cannot be liable for breaching Plaintiff's employment contract with AU because it was not a party to that contract (Dkt. 61 at 132); that Plaintiff's contract did not incorporate ACGME policies (*Id.* at 135–37); that Plaintiff's contract did not give controlling effect to the drug testing procedures outlined in the USG and SMSPA policies (*Id.* at 133–35); that Plaintiff adequately pled a violation of House Staff Policy 10 against Defendant BOR (*Id.* at 139–41); and that, although Defendant BOR violated House Staff Policy 13.2, that does not give rise to a breach-of-contract claim because Defendant

---

[1] Plaintiff's motion did not specify the claims she believes warrant reconsideration.   It was not until her reply brief that Plaintiff asked this Court to reconsider its dismissal of any particular claims.  (Dkt. 85 at 25.)

BOR has since "reinstated [Plaintiff] and restarted the grievance procedures in accordance with House Staff Policy 13" (*Id.* at 138). Plaintiff objected only to the first and last conclusions. (Dkt. 64 at 35–38.) The Court overruled Plaintiff's objections to the R&R's disposition of Count 1.

### 1. Incorporation of ACGME Policies

The Magistrate Judge found there could be no breach based upon violations of the ACGME policies because they were not incorporated into Plaintiff's employment contract. (*Id.* at 135–37). Plaintiff contends the Court should reconsider overruling its dismissal of Count 1 based on page 2 ("Page 2") of Plaintiff's Contract, which was not previously filed with the Court. (Dkt. 73-1 at 2.) But Plaintiff did not object to the Magistrate Judge's determination that the Contract did not incorporate the ACGME policies. (Dkts. 61 at 135–137; 64 at 36–38; 69 at 15–16); *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). The Court therefore did not independently analyze and address this issue in its Order, so there is no decision to reconsider. Rather, Plaintiff is raising

this issue for the first time in the instant motion, which is improper and does not warrant reconsideration.  *See Brogdon*, 103 F. Supp. 2d at 1338 (N.D. Ga. 2000) (explaining that a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier").

Even if Plaintiff had specifically objected, however, her argument still does not warrant reconsideration.  First, Plaintiff does not contend that Page 2 is newly discovered evidence, or even that it was not in her possession when she filed her objections to the R&R.[2]  (Dkt. 73-1 at 2.) Moreover, the only mention of ACGME on Page 2 is as follows:

> The term House Officer is used as a generic term to include interns, residents, and fellows in an approved ACGME Residency Program at the Medical College of Georgia, at Augusta University.

(*Id.*, Ex. 1.)   Page 2 makes no reference to any documents to be incorporated by reference nor does it even mention ACGME policies or

---

[2] It is also unclear to the Court whether "Page 2" is indeed the second page of Plaintiff's employment contract.  Defendant AUMC vehemently disputes that it is. (*See* Dkt. 6.)  Indeed, the document appears to be a separate, general institution-wide policy.  Plaintiff's name does not appear anywhere on the page, and the signatures at the bottom of the page are dated over a year earlier than the signatures in Plaintiff's contract.

procedures.  This language cannot be deemed to have incorporated the ACGME policies by reference.  *See Henkel Corp. v. Leggett & Platt, Inc.*, No. 1:09–cv–0463, 2009 WL 2230813, at *2 (N.D. Ga. July 24, 2009) (explaining that, in order to incorporate a separate, noncontemporaneous document by reference, the contract must "make[ a] clear reference to the document to be incorporated and describe[] it in such terms that its identity can be ascertained beyond doubt[.]").  The Court dismisses this argument.

### 2.   Contractual Grievance Procedure

Count 1 also contained a breach of contract claim against BOR for failing to comply with House Staff Policy 13.2 ("HS 13.2"), which addresses policies and procedures to be followed during evaluation of "House Office" promotion or disciplinary actions.  (Dkt. 69 at 15–16.)  The Magistrate Judge found, although BOR did not adhere to H.S. 13.2, Plaintiff's breach of contract claim based on this violation failed because due process procedures were fulfilled when Plaintiff was reinstated and the grievance process commenced in accordance with H.S. 13.2.  (Dkt. 61 at 138–39.)  In overruling Plaintiff's objections, the Court likewise found that Plaintiff could not establish the causal link between her termination

and BOR's failure to follow contract procedures in dismissing her.  (Dkt. 69 at 19.)

In her motion for reconsideration, Plaintiff claims the Court erred in finding that, relative to the outcome of the grievance hearing, the burden was only on Plaintiff to show that the denied hearing would have been favorable.  (Dkt. 73-1 at 4.)  Plaintiff argues that in a due process case, "if the plaintiff proves a wrongful termination, then the tortfeasor bears the burden of proving that plaintiff would have been terminated anyway." (Dkt. 73-1 at 4–5 (citing *Carey v. Piphus*, 435 U.S. 247 (1978); *see also, Alexander v. Menlo Park*, 787 F2d 1371, 1375 (9th Cir. 1986); *Beckwith v. Cnty. of Clark*, 827 F2d 595, 598 (9th Cir. 1987).)  But the three cases Plaintiff cites involved un-remediated procedural due process violations brought pursuant to 42 U.S.C. § 1983.  (Dkt. 73-1 at 4–5.)  Here, the Court found that "Defendant BOR reached essentially the same decision (non-renewal of Plaintiff's contract) even after reinstating her and complying with House Staff Policy 13.2." (Dkt. 69 at 19.)  Thus, any alleged due process violation was remediated when Plaintiff was reinstated and the process set out in H.S. 13 was followed.  This finding was not clear error.  Plaintiff's argument here is based simply upon a

disagreement with the Court's interpretation of case law and various Augusta University policies. That is not an appropriate basis for a motion for reconsideration. *Smith v. Goldberg*, 2021 WL 1037859, at \*2 (N.D. Ga. 2021) (inappropriate to use a motion for reconsideration to argue that "the court could have done it better").

### B.   The Constitutional Claims

Plaintiff also claims the "Court erred in dismissing the Constitutional Claims," which she later clarifies to mean Counts 14 and 15 of the Amended Complaint. (Dkts. 73 at 7–9; 85 at 25.) In Count 14, Plaintiff asserts violations of her Fourth and Fourteenth Amendment rights against Defendant Arnold, in his individual capacity, and Defendant Norton in her individual and official capacities, based on the random drug testing policy. (Dkt. 29 at 53–54, ¶¶ 287–88.) In Count 15, Plaintiff asserts violations of her Fourth and Fourteenth Amendment rights against Defendant Arnold, in her individual capacity, and Defendant Norton, in both her individual and official capacities for allegedly "failing to provide notice of charges and an opportunity to respond before taking Plaintiff's privileges, directly and foreseeably causing the termination." (Dkt. 29 at 56.) Addressing Counts 14 and 15

together, the Magistrate Judge determined "plainly, this is a special needs case" which excepted Defendants from the general rule that a Fourth Amendment "search" ordinarily must be based upon suspicion of wrongdoing. (Dkt. 61 at 108–14.) The Magistrate Judge concluded, since there was no constitutional deprivation, there was no need to determine whether Defendants Arnold and Norton were entitled to qualified immunity. (*Id.*)

### 1.    Special Need For Testing

Plaintiff argued in her objections to the R&R that the Magistrate Judge erred in finding that Plaintiff's status as a medical resident presented a "special need" for the testing. (Dkt. 64 at 21–24.) The Court overruled Plaintiff's objections, agreeing that Plaintiff presented such a need and citing numerous facts and case law to support that conclusion. (Dkt. 69 at 37–38.) In arguing that the Court erred in finding a special need for the testing, Plaintiff's motion for reconsideration asserts that (1) AU's policies did not provide Defendants Norton and Arnold the authority to randomly test Plaintiff on a monthly basis for drugs; and (2) the Court did not apply the correct factors in determining that there was a special need for the testing. (Dkt. 73-1 at 10–22.)

Plaintiff argues that Defendants did not follow the requisite procedures for "For Cause Testing," citing numerous provisions in the Medical Center's Substance Abuse Policy. (*Id.* at 9–10.) But in overruling Plaintiff's objections to the R&R, this Court expressly noted that "even if [AU's Substance Abuse Policy] should not be considered at the pleading stage, the Court would still dismiss Count 14." (Dkt. 69 at 41, n.8.) The Court finds no clear error. Any argument about Defendants' deviation from internal procedures, to the extent there was any, does not impact the Court's analysis of whether Plaintiff's Constitutional rights were violated. (*See* Dkt. 61 at 114 (citing *Fowler v. N.Y.C. Dep't of Sanitation*, 704 F. Supp. 1264, 1276 (S.D.N.Y. 1989).)

In challenging that Constitutional analysis, Plaintiff essentially repackages her prior objection that the Magistrate Judge, and now this Court, "misapplied the 'special needs' exception to the Fourth Amendment 'reasonableness' requirement for searches." (*See* Dkts. 64 at 21; 73-1 at 12–13.) Reconsideration is not warranted on this ground. *See Brogdon*, 103 F. Supp. 2d at 1338 (reconsideration not warranted where plaintiff "repackage[s] familiar arguments to test whether the Court will change its mind.")

### 2.   Qualified Immunity

Along with affirming that there was a "special need" for the testing, the Court also found that Defendants Arnold and Norton are protected by qualified immunity because Plaintiff's drug testing was not clearly unlawful.  (Dkt. 69 at 38.)  Plaintiff argues it was clear error to grant qualified immunity because they knew or should have known the "testing they were doing monthly, was not lawful testing under applicable state statutes, regulations, and their own policies, in violation of Fourth Amendment Rights."   (Dkt. 73-1 at 25.)   But Plaintiff does not substantively contest four of the six factors the Court identified in analyzing whether Plaintiff's drug testing violated clearly established federal law, specifically: (1) any drug-use would seriously endanger the public given Plaintiff's nature of work; (2) Defendants were advised Plaintiff was previously prescribed marijuana and used marijuana for stress; (3) Plaintiff was arrested for driving under the influence; and (4) Plaintiff was seen crying in the ICU.  (Dkts. 69 at 40; 73-1 at 12–15.) And the Amended Complaint establishes the remaining two factors: (1) Plaintiff's June 25, 2018, pre-employment drug test revealed the presence of THC; and (2) Plaintiff did not report for a requested drug test

on January 17, 2019, and February 13, 2019. (Dkt. 29 at 8, 13, 16.) The Court found based on these facts that Defendants had several reasons to test Plaintiff for drugs and the testing did not violate clearly established law. This finding was not clear error.

For the first time (and in her reply brief), Plaintiff raises an alternative argument that the Court erred by "settl[ing] on the first of the three possible bases for qualified immunity, the question of a prior similar case" rather than conducting a Fourth Amendment fact-intensive balancing test. (Dkt. 85 at 5.) This argument mischaracterizes both the law and this Court's Order. First, the law provides that, to *overcome* a qualified immunity defense, a plaintiff may demonstrate "that the contours of the right were clearly established in one of three ways," by showing that: (1) a materially similar case has already been decided; (2) a broader, clearly established principle that should control the novel facts of the situation; (3) the conduct involved in the case may so obviously violate the Constitution that prior case law is unnecessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). But this rule outlines a *plaintiff's* burden to overcome a qualified immunity defense, not alternative approaches a court may take in granting qualified immunity.

Plaintiff next erroneously contends that "without any balancing, the Court went directly to qualified immunity and considered and settled on the first of the three possible bases for qualified immunity, the question of a prior similar case." (Dkt. 85 at 5 (citing Dkt. 69 at 40–41, n.8).) That is not correct. The Court cited *both* the Fourth Amendment and the absence of a materially similar case on point in determining qualified immunity warranted dismissal:

> Even assuming there are enough countervailing facts to make Plaintiff's continued drug testing unreasonable, the Court cannot say every reasonable official would invariably have reached that conclusion—***particularly given the fact-intensive balancing test applicable under the Fourth Amendment*** and the absence of any "materially similar case on point," which "usually means qualified immunity is appropriate." *King*, 961 F.3d at 1145; *see Malcolm*, 574 F. App'x at 883 ("When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.").

(Dkt. 69 at 40.) And the Court has already determined that the special needs exception to the Fourth Amendment applies. (*Id.* at 37.) At bottom, Plaintiff's arguments about qualified immunity, including her efforts to contort the applicable legal standard and mischaracterize the Court's ruling, appear to be a veiled attempt to invite the Court to reconsider its ruling that Plaintiff presented a "special need" for testing.

14

As stated above, reconsideration is not warranted on this ground. *See Brogdon*, 103 F. Supp. 2d at 1338. The Court dismisses Plaintiff's arguments related to the Constitutional claims.

## III.  Conclusion

The Court **DENIES** Plaintiff's Motion for Reconsideration (Dkt. 73).

**SO ORDERED** this 2nd day of August, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE