# **EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SARAH KAVIANPOUR, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, *et al.*, <br><br> Defendants | Civ. Act. No. 1:20-cv-152 |

DECLARATION OF MICHELE REED

Personally appeared the undersigned, Michele Reed who with knowledge for the penalties for perjury states at the following facts are true of her own personal knowledge:

1. My name is Michele Reed and my signature is below, I am an adult competent to make this statement, which I make of my own personal knowledge of the penalties for perjury.

2. In July 2016, I became an employee of what is commonly referred to, and for years was known as the Medical College of Georgia and is now known as Augusta University and AU Health System.

1

3. My title was Tile IX Coordinator and in that position I was responsible for policy implementation related to sexual misconduct and interpersonal violence allegations. I was responsible for prevention education efforts related to Title IX allegations for employees and students, compliance for Title IX allegations, risk assessment for Title IX allegations and oversight of USG/AU policy, procedures, protocols, investigations, The complaints/allegations were made by undergraduate students, nursing students, medical students, medical residents, medical fellows, graduate students, faculty, staff, manager's and leaders.

4. I was assigned to multiple supervisors over the course of four and a half years. During the first year, I was supervised by James Rush and after learning he was released from his position at AU, I was supervised by Clay Sprouse who then hired John Lott (for a short timeframe). John Lott was released from his role and then I reported back to Clay Sprouse who hired Brittney Alls (during my last year while employed at AU). Clay Sprouse's role was Interim Vice President of Audit, Compliance, Enterprise and Risk Management (ACERM).

5. While serving as Title IX Coordinator, multiple cases which were not in compliance with Title IX regulations, not in compliance with USG policy, not in compliance with AU policy as well as state and federal Title IX regulations. I reported the information to Jim Rush, Clay Sprouse, John Lott, Wesley Horne,

Na'Tasha Webb Prather (USG), Barry Grosse, Title IX investigators and many other AU colleagues.

6. This declaration and statement is being made to provide my knowledge of circumstances surrounding a Title IX complaint made by Dr. Sarah Kavianpour, a neurosurgery resident, in the Spring of 2019 and the arising investigation, and what transpired.

7. I was made aware of allegations by Dr. Kavianpour that in April 2019, Dr. Sarah Kavianpour informed Clay Sprouse that she had been subjected to discriminatory and retaliatory treatment on account of gender, and that she had been dismissed from her residency for prohibited reasons and that she wanted to report retaliation.

8. In late June or early July 2019, I was informed that John Lott was my supervisor and Interim Chief Compliance Officer for the department.

9. On July 2, 2019, I was asked by my supervisor, John Lott, to join him in interviewing Dr. Sarah Kavianpour, which Ben Hutton later joined as well.

10. During the interview Dr. Kavianpour provided numerous documents, email messages, text messages and policy documents (she provided a binder at the meeting with a copy of the information for us to review and keep, and in the next couple days she also provided more information we requested after the interview).

3

11. I'm not able to recall how many pages of meeting notes I provided to AU but I remember having a discussion with Ben Hutton and John Lott regarding the content of what she communicated. Dr. Kavianpour provided evidence and documents related to her claims of sex and gender bias and discrimination, retaliation, as well as information related to numerous allegations of AU and USG policy and procedure violations (Drug Testing policy, grievance policy and so on).

12. The meeting with Dr. Kavianpour lasted more than two hours and it was clear to me, based upon the information shared, that there were allegations of sexual harassment, gender bias, gender discrimination, retaliation, and numerous other university policy violations.

13. John Lott escalated the information to Medical Center Legal and Clay Sprouse during the meeting with Dr. Sarah Kavianpour.

14. After meeting with Dr. Sarah Kavianpour, Ben Hutton and I provided John Lott with our assessment of the information, and it was clear to all of us that many of the allegations were concerning and needed to be addressed immediately.

15. Another interview meeting was convened with Debra Arnold on July 3, 2019, about the complaints of Dr. Kavianpour, present for the meeting was Clay Sprouse, John Lott, Debra Arnold and me.

16. During the July 3 meeting, we discussed Dr. Sarah Kavianpour's allegations, and Debra Arnold stated random drug testing was random days, and not random people, and she admitted to all of us that the university did not follow proper policy surrounding the drug testing administered to Dr. Kavianpour.

17. During the July 3, 2019, meeting Debra Arnold and Clay Sprouse appeared to be jovial, casually commenting about the circumstances, but Debra appeared to be defensive when John Lott asked her questions.

18. I recall Debra Arnold made a comment that the drug testing policy administered to Dr. Kavianpour was not correct and a different policy should have been used. Debra Arnold mentioned the drug testing policies needed to be revised and rewritten.

19. On or around July 16, 2019, I learned from Clay Sprouse that John Lott was no longer employed by AU and no longer my supervisor. I heard he was no longer employed based upon what Clay Sprouse communicated to the ACERM team and since he was the Interim supervisor. I heard through Clay Sprouse and others at AU that Debra Arnold had complained about John Lott, alleging that Lott had been rude to her in the July 3 meeting.

20. During the meeting with Clay Sprouse, Debra Arnold, John Lott and I, John Lott was cordial, professional and was trying to determine what policies HR had used for the drug testing of Dr. Kavianpour.

21. Within a week, John Lott was removed and terminated from the position, and it was explained to me by Clay Sprouse that John Lott "wasn't fitting in with the team."

22. Clay Sprouse said he had to continue a positive relationship with others at the University and John's approach wasn't in alignment.

23. On July 3, 2019, as Debra Arnold and I were walking out of the meeting, I asked Debra Arnold if the academic department or Graduate Medical Evaluation, was influencing the actions of Human Resources related to Dr. Kavianpour and her dismissal from the program as well as the mandate for drug testing. Debra Arnold indicated the academic department did not want Dr. Kavianpour in the department, however, Debra Arnold did not specifically inform me who in the department was making these comments.

24. Debra indicated that Human Resources had information that Dr. Kavianpour tested positive for marijuana, and she said Dr. Kavianpour was charged with a DUI.

25. On or around July 15, 2019, I was informed by John Lott that I was not going to be involved with anything related to Dr. Kavianpour's case and that Clay Sprouse decided to send the allegation to USG.

26. From that time forward, I was not involved with any discussions nor further consulted regarding the allegations involving Dr. Kavianpour.

27. On July 26, 2019, I was interviewed by Wesley Horne (Director for Compliance at USG) and Dr. Juanita Hicks (Vice Chancellor of Human Resources for USG) about my work with John Lott and about Dr. Kavianpour's complaints and the investigation that ensued.

28. Wesley Horne was taking notes during my interview on July 26, 2019 (PFF Exhibit 141) and the summary of interview notes does not accurately reflect the magnitude of my concerns related to Title IX. I explained to Wesley and Juanita Hicks that I was told Title IX does not apply to the hospital setting and this was not true. I explained to Wesley and Juanita Hicks that I explained this to Jim Rush, Clay Sprouse, Chris Melcher and others in senior leadership. I conveyed concerns about cover up, concealment and exclusion of the Title IX Coordinator from decision making related to cases. I provided Wesley Horne and Dr. Hicks much more details which are not properly reflected in the summary of notes.

29. On about November 5, 2019, I provided Clay Sprouse with the Title IX intake forms via email before Sprouse was going to meet with Dr. Kavianpour that day.

30. Within a week or two after interviewing Dr. Kavianpour, I contacted Na'Tasha Webb Prather (USG Title IX Director) to discuss the interview with Dr. Kavianpour. I asked Na'Tasha Webb Prather if someone from AU had contacted her (such as Clay Sprouse) and/or if someone from USG/BOR consulted with her since Clay Sprouse indicated he was forwarding Dr. Kavianpour's complaint to USG.

31. As the Title IX Coordinator at AU, I had a dotted line reporting structure to Na'Tasha Webb Prather (all Title IX Coordinators had dotted line to USG through Na'Tasha Webb Prather). For case management, all TIX Coordinators had 1:1 scheduled meetings to discuss cases.

32. Na'Tasha informed me that no one from AU (other than me) had consulted and/or provided her with the Dr. Kavianpour allegation and she was planning to follow up with USG Legal to get a status update.

33. On February 26, 2020, I received an email from Na'Tasha Webb Prather who asked me to assign an AU investigator and oversee the investigation process.

34. Due to the named respondents in the case of Debra Arnold, Susan Norton, Clay Sprouse, Chief Medical Officer Dr. Coule, President Keel and several members of the legal team including Greg Bryan and Chris Melcher, I explained to Na'Tasha Webb Prather that I did not think it was in the best interest of the university for me to serve as the Title IX Coordinator for this allegation because several respondents named in the case had decision making authority and directly supervised me. Also, I recommended to Na'Tasha that we not assign someone from AU to investigate the allegation since I did not have a dedicated Title IX investigator (Title IX Investigators were volunteers). The respondents named in the Dr. Kavianpour allegation was a conflict of interest for me.

35. Debra Arnold (named as a respondent) was a volunteer Title IX Investigator; Susan Norton (named as a respondent) was a Title IX Appeals officer and Clay Sprouse (named as a respondent) was my supervisor and I had direct reporting line to him.

36. Augusta University hired a third-party agency (Legility) to conduct the investigation and because of the COI, I was not involved with any aspect of the investigation, and I do not know the outcome of the Title IX investigation. I recall receiving multiple phone calls from respondents named in the case including Debra A, Susan Norton, and Neurology leaders who wanted to learn whether or not I was

9

involved with the investigation and the process of decision making. I explained to everyone who contacted me that the investigation was being conducted by a neutral third-party to eliminate any conflict of interest. I recommended to Na'Tasha Webb Prather that she serve as the Title IX Coordinator, to eliminate any conflict-of-interest.

Respectfully submitted this 13 day of May, 2022.

_____
Michele Reed

Prepared by:

John P. Batson
1104 Milledge Road
Augusta, GA 30904
706-737-4040
jpbatson@aol.com

10